| | |
|---|---|
| JUSTIN GRAMS and KRISTA GRAMS, h/w | : |
| 1900 Fitzwatertown Road | : |
| Willow Grove, PA 19090 | : |
|     Plaintiffs, | : |
|     v. | : No. 2:24-cv-1378 |
| AMAZON.COM, INC | : |
| 410 Terry Avenue North | : |
| Seattle, Washington 98109 | : |
|     And | : |
| SHENZHEN KANGERJIAN | : |
| INTELLIGENT TECHNOLOGY CO., | : |
| 4th Floor, Building C2, | : |
| Fuyuan Industrial City, No. 598, | : |
| Zhoushi Road, Jiuwei Community, | : |
| Hangcheng Street, Baoan District, | : |
| Shenzhen, Guangdong, China | : |
| | : JURY TRIAL DEMANDED |
|     Defendants | : CIVIL ACTION |
| | : |

## COMPLAINT

The Plaintiffs, Justin Grams and his wife, Krista Grams, by and through their undersigned attorneys, file this Complaint against the Defendants, ShenZhen Kangerjian Intelligent Technology co., LTD., and AMAZON.COM, INC. ("Amazon"), and state as follows:

## NATURE OF THE ACTION

This is a diversity action for strict product liability, negligence, breach of implied warranty, and Unfair Trade Practices arising out of the sale of a pair of electric heated insoles known as the JUNSYOUNG Heated Insoles, 3500 mAh Rechargeable Heated Insoles with Remote Control (the "JUNSYOUNG Heated Insoles ") manufactured by ShenZhen Kangerjian Intelligent Technology co., LTD ("ShenZhen") and sold by Amazon.Com, Inc. ("Amazon") was

marketed to consumers as safe and effective, and was advertised, packaged and warranted with the assurance: "PLEASE REST ASSURED TO BUY!" Contrary to the marketing statements, advertisements and packaging, the JUNSYOUNG Heated Insoles were inherently dangerous, the battery exploded which caused severe personal injuries when Plaintiff Justin Grams' shoe became a flaming furnace. Plaintiff, who is in his 30's, suffered fourth degree burns and will require skin grafts and most likely will be left with permanent injuries. These insoles were known by Amazon to be dangerous, as suits in other jurisdictions have been brought regarding battery socks and insoles from China that have caused burns and severe personal injuries to consumers. Amazon has since pulled the Jamric storefront and removed Plaintiff's order history so Plaintiff could not access what he purchased.

## PARTIES AND VENUE

1. At all relevant times herein, Plaintiffs were citizens and residents of Willow Grove Pennsylvania

2. At all relevant times ShenZhen Kangerjian Intelligent Technology co., LTD ("ShenZhen") is a business entity located in the People's Republic of China ("China"), R4th Floor, Building C2, Fuyuan Industrial City, No. 598, Zhoushi Road, Jiuwei Community, Hangcheng Street, Baoan District, Shenzhen, Guangdong, China

3. At all times relevant herein, Defendant Amazon.com, Inc. was and is a corporation organized under the laws of the State of Delaware with its principal place of business located 410 Terry Avenue North, Seattle, King County, Washington, 98109.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states and the matter in controversy exceeds the sum of $150,000, exclusive of interest and costs.

5.      Venue is proper in this District and in this Court pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred here, including the injuries and damages sustained by the Plaintiff.

## FACTUAL BACKGROUND

6.      ShenZhen develops, designs, manufactures, constructs, imports, distributes, sells and/or otherwise places in the stream of commerce electrically heated products including, but not limited to the JUNSYOUNG Heated Insoles

7.      At all times relevant herein, ShenZhen marketed, advertised, sold and placed its electrically heated insoles, including, but not limited to, the JUNSYOUNG Heated Insoles, into the stream of commerce through various means including as a third-party seller on Amazon.com (the "Amazon website").

8.      At all times relevant herein, the JUNSYOUNG Heated Insoles were advertised as:

> "The heated insoles perfect for outside work, hunting, fishing, running, cycling, hiking, motorcycle, skiing, travel, camping, ski adventures, etc.. "

9.      At all times relevant herein, ShenZhen made various statements, representations, guarantees, warranties and/or promises on the Amazon website regarding the JUNSYOUNG Heated Insoles, including, but not limited to, the following:

> Our each Heated Insoles rigorously tested because we believe that you deserve the best.If you have any questions please leave us an email , we will respond within 24 hours. PLEASE REST ASSURED TO BUY!

10.      Despite ShenZhen's statements, representations, guarantees, warranties and/or promises on the Amazon website that the JUNSYOUNG Heated Insoles were "rigorously tested" the product was not safety tested by Underwriters Laboratories or any other Nationally Recognized Testing Laboratory, and did not comply with or meet recognized safety standards in the United States.

**<u>Amazon Marketplace and Business Solutions Agreement ("BSA")</u>**

11.     Amazon owns, operates and controls an online marketplace for consumers – amazon.com, also known as the Amazon marketplace – that includes listings for consumer products.

12.     Through amazon.com, Amazon offers an e-commerce marketplace in which Amazon and other merchants can connect with consumers via the internet.

13.     Products offered for sale on amazon.com appear on webpages known as product listings and are identified by Amazon Standard Identification Numbers, or ASINs, assigned by Amazon.

14.     Merchants are required to enter into a business arrangement with Amazon to participate in Amazon's consumer marketplace, which includes an Amazon Services Business Solutions Agreement ("BSA").

15.     Through the BSA, Amazon is integrally involved in and exerts extensive control over the sale and distribution of third-party products.

16.     Under the terms of the BSA, Amazon requires that third-party sellers enroll b

17.     completing a registration process. BSA Section 1.

18.     Under the terms of the BSA, Amazon may at any time cease providing any or all services to the third-party seller at Amazon's sole discretion and without notice. BSA Section 1.

19.     Under the terms of the BSA, Amazon requires that third-party sellers represent that they are duly organized, validly existing and in good standing. BSA Section 5.

20.     Under the terms of the BSA, Amazon requires that third-party sellers represent that they will comply with all applicable laws.

21.     Under the terms of the BSA, Amazon "may in our sole discretion restrict, modify or otherwise determine the content, appearance, design, functionality and all other aspects of [a third-party seller's] Product Ads, and [Amazon] may remove any of [their] Product Ads without notice. BSA Section PA-1.

22.     Under the terms of the BSA, Amazon has "the right in our sole discretion to determine the content, appearance, design, functionality and all other aspects of the Amazon Sites, including by redesigning, modifying, removing or restriction access to any of them, and by suspending, prohibiting or removing any listing." BSA Section S-7.

23.     Under the terms of the BSA, Amazon may withhold any payments to a third-party seller if, in Amazon's sole discretion, it determines that the seller's actions or performance may result in "claims, disputes or other risks." BSA Section 2.

24.     Under the terms of the BSA, if Amazon determines that a third-party seller's account "has been used to engage in deceptive, fraudulent or illegal activity, then [Amazon] may in [Amazon's] sole discretion permanently withhold any payments" to the seller. BSA Section

25.     Under the terms of the BSA, Amazon requires third-party sellers to ensure that its "Products (including packaging) . . . comply with all applicable Laws (including . . . marking and labeling requirements). BSA Section S-1.1. See also BSA Section PA-7.1.

26.     Under the terms of the BSA, Amazon requires third-party sellers to release, indemnify, defend and hold Amazon harmless "against any claim, loss, damage, settlement, cost, expense or other liability (including without limitation, attorney's fees) arising from or related to. . . [the third-party seller's] products . . . and any personal injury, death or property damage related thereto." BSA Section 6. See also Sections F-10 and PA-7.2.

27. Under the terms of the BSA, Amazon requires certain third-party sellers to maintain commercial general, umbrella or excess liability insurance and, at Amazon's request, provide to Amazon certificates of insurance evidencing or verifying the coverage. BSA Section 9.

28. Under the terms of the BSA, Amazon requires third-party sellers to keep confidential certain Amazon information, including Amazon Transaction Information (i.e., Order Information), and restricts its use by third-party sellers. BSA Sections 11 and 14.

29. Under the terms of the BSA, Amazon "may use mechanisms that rate, or allow shoppers to rate, [the third-party seller's] Products and [their] performance as a seller and Amazon may make these ratings and feedback publicly available. BSA Section S-1.2

30. Under the terms of the BSA, Amazon had the "exclusive right" to receive all Sales Proceeds on the third-party seller's behalf for each transaction. BSA Section S-1.2.

31. Under the terms of the BSA, Amazon agreed to "bear the risk of credit card fraud (i.e., a fraudulent purchase arising from the theft and unauthorized use of a third party's credit card information) in connection with [a third-party seller's] Transaction. BSA Section S-1.4 and W-3.3.

32. Under the terms of the BSA, Amazon requires third-party sellers to ensure that "the Purchase Price and every other term of offer or sale" of the Product (including associated shipping and handling charges, Shipment Information, any "low price" guarantee, rebate or discount, any fee or discounted products or other benefit available as a result of purchasing one or more other products, and terms of applicable cancellation, return and refund policies) "is at least as favorable to Amazon Site users as the most favorable terms upon which a product is offered or sold via [the third-party seller's] Sales Channels." BSA Section S-4.

33. Under the terms of the BSA, if a third-party seller violates Amazon's policies or applicable law, Amazon may take corrective action, including suspending the seller, destroying inventory without compensation, and withholding payments to the seller.

34. Under the terms of the BSA, third-party sellers must pay Amazon (a) appliable Referral Fees [a fee based on Sales Proceeds]; (b) any applicable Variable Closing Fee; (c) a non-refundable Selling on Amazon Subscription Fee in advance each month; and (d) any other applicable fees. BSA Section S-5.

35. Under the terms of the BSA, Amazon "will process all payments, refunds and adjustments for [third-party seller] Transactions. BSA Section W-3.2. 37.

36. Under the terms of the BSA, "Amazon's, or one of its Affiliates', name will appear on the customer's credit card statement." BSA Section W-3.2. 38.

37. Under the terms of the BSA, Amazon "will be solely responsible for all customer service issues relating to payment, credit card processing, debiting or crediting, and the "A-to-z Guarantee." BSA Section W-4.2.

**The Fulfillment by Amazon ("FBA") Program**

38. Amazon also offers third-party vendor services for additional fees, including the Fulfillment by Amazon ("FBA") program and payment processing service that charges buyers and remits the purchase price to the third-party vendor, less the fees that Amazon retains

39. Amazon offers a variety of services in furtherance of bringing its FBA products to consumers' doorsteps. These services include, but are not limited to, storing FBA products at Amazon fulfillment centers, stocking and maintaining an inventory of FBA products, and administering additional sorting and shipping services, including the use of Amazon employees to interact with the product, categorize it with the help of computers and robots, label it, and

move it through the distribution process. Additional services include Amazon's retrieval of FBA products from the merchant's inventory, placement of FBA products in a shipping container, delivery of FBA products directly to consumers' doorsteps in Amazon delivery vehicles or via a shipping carrier Amazon procures, approval of all FBA ASINs, provision of 24/7 customer service, and processing all FBA product returns.

40. Once a third-party seller is accepted into the FBA, it "must apply to register each product you offer that you wish to include in the FBA program." BSA Section F-1.

41. Amazon "may refuse registration in the FBA of any product, including on the basis that it is an FBA Excluded Product or that it violates applicable Program Policies." BSA Section F-1.

42. FBA is limited to units that are shipped to and from Amazon's fulfillment centers. BSA Section F-3.1.

43. Amazon requires that FBA products be shipped to them in accordance with Amazon's applicable Program Policies. BSA Section F-3.1.

44. Amazon may, at its option, allow third-party sellers to ship Units at Amazon's expense to Amazon fulfillment centers using discounted shipping rates that Amazon may make available for certain carriers, and Amazon will be the payer of record with respect to all Units shipped to them using such discounted rates. BSA Section F-3.3.

45. Amazon may refuse to accept, or may return or dispose of any "Unsuitable Unit" if Amazon determines, in its "sole discretion that the Unit creates a safety, health, or liability risk to Amazon, our personnel or any third party." BSA Section F-3.2.

46. Amazon maintains electronic records that track inventory of all products stored in Amazon Fulfillment Centers or other Amazon warehouses or facilities. BSA Section F-4.

8

47. Amazon may move units among its facilities. BSA Section F-4. 49. Amazon is not required to physically mark or segregate a third-party seller's Units from other inventory, including inventory owned by Amazon, and may elect to commingle such inventory at its fulfillment centers. BSA Section F-4. 50. Amazon admits that it acts as a "bailee or warehouseman" with respect to inventory maintained in its facilities. BSA Section F-4.

48. As part of the FBA program, Amazon "will ship Units from our inventory of Your Products to the shipping addresses" of customer orders. BSA Section F-5 (Emphasis added).

49. Amazon reserves the right to ship Units together with products purchased from other merchants, including Amazon's own affiliates. BSA Section F-5. 53. Amazon employees, with the assistance of Amazon's electronic records and automation at Amazon's facilities, physically ship or cause to be shipped through a shipping carrier the FBA products ordered by consumers.

50. Amazon selects the shipping carrier and makes arrangements with the shipping carrier to pick up the product from one of Amazon's fulfillment centers or warehouses for delivery to the customer.

51. Amazon is "responsible for and [has] sole discretion regarding all customer service issues relating to packaging, handling and shipment and customer returns, refunds and adjustments related to Amazon Fulfillment Units. BSA Section F-8.2.

52. . Amazon has "the right to determine whether a customer will receive a refund, adjustment or replacement for any Amazon Fulfillment Unit." BSA Section F-8.2.

53. Amazon may return Units to the third-party seller for any reason, and Amazon "may dispose of any Units we are entitled to dispose of in the manner [Amazon] prefer. Title to each disposed Unit will transfer to [Amazon] at no cost to [Amazon] as necessary for [Amazon]

to dispose of the Unit, and [Amazon] will retain all proceeds, if any, received from the disposal of any Unit." Section F-7.1 and 7.2.

54.     When consumers return an FBA product, the consumers ship the product back to Amazon, not the merchant.

55.     When a product is returned, Amazon inspects the FBA product and determines whether the product can be resold. If Amazon determines that the FBA product can be resold, Amazon returns the product to the inventory at the applicable Amazon facility. If Amazon determines that the product cannot be resold, the merchant may choose to have it sent to its own facility.

56.     If inventory is damaged or misplaced while in Amazon's control (in the fulfillment center, during delivery to or from a customer or inbound if using an Amazon Partnered Carrier), Amazon will purchase the inventory from the FBA seller. [https://sellercentral.amazon.com/gp/help/external/G201081250?language=en_US]

57.     Amazon assured sellers such as ShenZhen that when they shipped their inventory to Amazon for fulfillment, that "you can be assured that it will be stored in a secure environment." [https://sellercentral.amazon.com/gp/help/external/G201081250?language= en_US].

58.     .Amazon charges FBA sellers a storage fee beginning on the day (up to midnight) that the Unit arrives at a fulfillment center and is available for fulfillment by Amazon until the earlier of (a) the day (up to midnight) Amazon receives a valid customer order for the product or request from the seller to return or dispose of the Unit, or (b) the day (up to midnight) Amazon actually ships the Unit to the seller's designated return location or disposes of the Unit. BSA Section F-9.1.

59. Amazon determines the amounts charged to customers for shipping and gift wrap service for Units fulfilled through the FBA Program. BSA Section F-9.2

60. The contracts between Amazon and merchants also state that Amazon: (a) has the authority to format the product's listing on its online marketplace, which includes how a listing is displayed to consumers; (b) may reject products that Amazon determines are illegal, sexually explicit, defamatory, or obscene; (c) will require merchants to communicate with their customers exclusively through Amazon's platform; and (d) shall process payments for all purchases of the FBA products, charge the payment instrument designated in each individual consumer's account, and remit the agreed-upon monies to the merchant minus the service fees due to Amazon set forth in the applicable contracts.

61. Upon information and belief, though the amount varies depending on the product, Amazon's FBA fees can amount to as much or more than 40% of the sales price of a given product. 66. In addition, Amazon polices the prices charged by merchants listing products on amazon.com through its Fair Pricing Policy, which gives Amazon the right to take action against merchants for pricing that harms consumer trust. The Fair Pricing Policy provides that "[p]ricing practices that harm customer trust include, but are not limited to: . . . setting a price on a product or service [on amazon.com] that is significantly higher than recent prices offered on or off Amazon." [https://sellercentral.amazon.com/gp/help/external/G5TUVJKZHUVMN77V]. Through the actions described above, Amazon is a "distributor" of a "consumer product" that is "distributed in commerce," for its FBA products.

62. In sum, Amazon acts as a "distributor" of its FBA products by: (a) receiving delivery of FBA consumer products from a merchant with the intent to further distribute the product; (b) holding, storing, sorting, and preparing for shipment FBA products in its

11

warehouses and fulfillment centers; and (c) distributing FBA consumer products into commerce by delivering FBA products directly to consumers or to common carriers for delivery to consumers.

63. Amazon set the terms of its relationship with ShenZhen through its contractual agreements and policies including, but not limited to, the BSA and the FBA Program.

64. . At all times relevant herein, ShenZhen was a party to a BSA with Amazon.

65. At all times relevant herein, ShenZhen was approved as a seller under Amazon's FBA Program.

66. ShenZhen sold electric heated insoles on the Amazon marketplace website titled:

**Heated Insoles, 3500 mAh Rechargeable Foot Warmer with Remote Control, Up to 13 Hours Heating Electric Heated Insoles for Men Women Camping Hiking Outdoor Hunting Fishing – L**
**Brand: JUNSYOUNG**

67. ShenZhen registered the product under Amazon's FBA Program.

68. . Amazon accepted and/or approved the Junsyoung Heated insoles" as a registered Product under Amazon's FBA Program.

69. Amazon assigned the Amazon Standard Identification Number ("ASIN") B0CCDR266V to the product.

70. Amazon marketed, advertised, sold, distributed, and placed the Junsyoung Heated insoles into the stream of commerce.

**The Amazon Product Safety Team**

71. At all times relevant herein, Amazon had in place a "Product Safety and Recalls".

72. Amazon claims that its Product Safety Team:

> **Our Product Safety Team investigates and acts on reported safety complaints and incidents to protect customers from risks of injury related to products sold on Amazon.com.**

73. .Amazon assured and promised its users that: "Amazon monitors the products sold on our website for product safety concerns."

https://www.amazon.com/gp/help/customer/display.html?nodeId=GLD7VXFKV4AWU78X

74. Amazon assured and promised its users that where a product has safety concerns, Amazon "may remove the product from the website, reach out to sellers and manufacturers for additional information, place relevant warnings on the product detail page, or take other actions depending on the situation. We may also report product safety concerns to applicable government agencies in order to bolster their safety data and help facilitate any necessary recalls."

75. . At all times relevant herein, Amazon also maintained and had in place an automated system that looked for safety-related keywords in customer reviews. Reviews that have those keywords are then evaluated by Amazon to determine whether there is a product safety issue.

**Amazon's "A-to-z" Guarantee**

76. At all times relevant herein, Amazon provided its customers with an "A-to-z Guarantee" for purchases made on its website, including purchases made from third-party sellers.

77. The A-to-Z Guarantee protects Amazon customers when they buy items sold and fulfilled by a third-party seller. It covers both the timely delivery and condition of the items.[https://www.amazon.com/gp/help/customer/display.html?nodeId=GQ37ZCNECJKTFYQV]

78. The A-to-z Guarantee covers defective products sold by third-party sellers.

**The Product's Placement on Amazon.Com**

79. The JUNSYOUNG Heated Insoles ASIN B0CCDR266V, was a consumer product imported from China.

80. The JUNSYOUNG Heated Insoles ASIN B0CCDR266V, was imported, distributed and sold in U.S. commerce.

81. . At all times relevant herein, Amazon provided an electronic marketplace that connects buyers and sellers, including the buyers and sellers of the JUNSYOUNG Heated Insoles ASIN B0CCDR266V.

82. ShenZhen applied to register JUNSYOUNG Heated Insoles ASIN B0CCDR266V, as a product sold through Amazon's FBA program.

83. Amazon retained the right to refuse or reject registration of the JUNSYOUNG Heated Insoles ASIN B0CCDR266V for various reasons.

84. Amazon approved the registration of the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, as a product sold on Amazon.com through Amazon's FBA program.

85. Amazon made the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, available for purchase on its Amazon.com website through Amazon's FBA program.

86. The "the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, was imported, distributed, and offered for sale to consumers on amazon.com under the FBA program.

87. Amazon provided logistics service for the JUNSYOUNG Heated Insoles ASIN B0CCDR266V.

88. ShenZhen shipped the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, to an Amazon fulfillment center for storage.

89.     Amazon accepted possession of the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, from ShenZhen.

90.     Upon receiving the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, Amazon scanned the product and entered it into its tracking system. [https://sellercentral.amazon.com/gp/help/ external/G201081250?language=en_US]

91.     The JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, was warehoused or stored by Amazon at an Amazon fulfillment center or warehouse.

92.     Amazon charged fees for the storage of the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, at its warehouses or Amazon fulfillment centers.

93.     The JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, was inventoried by Amazon.

94.     . At all times relevant herein, Amazon provided inventory tracking and shipping information regarding the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V.

95.      Amazon attracted customers to the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, by listing it and making it available for purchase on its Amazon.com website.

96.     Customers purchased the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, from the Amazon.com website by adding it to their Amazon cart.

97.     Amazon charged customers purchasing the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, by charging the customer's credit card or other payment information maintained by Amazon in its files or systems.

98.     Amazon accepted the risk that the customer's payment information for the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, could turn out to be fraudulent.

99. Amazon received and processed the payments for the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, purchased from the Amazon.com website.

100. Upon purchase by an Amazon user, Amazon retrieved the JUNSYOUNG Heated Insoles ASIN B0CCDR266V purchased on the Amazon.com website from one or more of its Amazon fulfillment centers or warehouses.

101. Amazon packed the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, in boxes for shipment to customers.

102. Amazon controlled the packaging of the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, purchased on the Amazon.com website.

103. Amazon retained control to ship the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, purchased on the Amazon.com website in Amazon branded boxes which may include the Amazon name, logo and other Amazon-specific branding and messaging.

104. Amazon retained control to ship together with the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, products offered by Amazon itself or other third-party sellers.

105. Amazon shipped the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, purchased on the Amazon.com website to purchasers using either Amazon's own shipping carriers, Amazon approved shipping carriers, or third-party carriers.

106. . Amazon selected the shipping carriers and made the arrangements for the shipping carriers to pick up the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, from an Amazon Fulfillment Center or warehouse and deliver it to the customer.

107. Amazon handled and processed all customer returns of the JUNSYOUNG Heated Insoles ASIN B0CCDR266V.

108.     Customers who sought to return the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, purchased on the Amazon.com website would ship them back to Amazon, not ShenZhen.

109.     Amazon inspected the customer returns of the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, and determined whether they could be resold.

110.     Amazon provided and offered other services with respect to the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, consistent with the FBA program and its policies and procedures.

111.     Amazon controlled the conditions of ShenZhen's offer for sale of the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, on the Amazon.com website.

112.     Amazon owned and controlled the relationship with the buyer of the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, on the Amazon.com website.

113.     .Amazon limited and/or conditioned ShenZhen's access to Amazon's customer information.

114.     Amazon required ShenZhen to communicate with customers through Amazon regarding the JUNSYOUNG Heated Insoles  ASIN B0CCDR266V, made available for purchase on its Amazon.com website.

115.     . Amazon required ShenZhen to use only the tools and methods designated by Amazon to communicate with Amazon customers.

116.     Amazon prohibited ShenZhen from using Amazon customer or transaction information for marketing or promotional purposes.

117.     Amazon did not contact ShenZhen for approval of customer purchases of the JUNSYOUNG Heated Insoles ASIN B0CCDR266V.

118. Amazon itself decided whether to allow each customer purchase of the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, to go through.

119. Amazon charged fees on the purchase of the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, sold on its Amazon.com website.

120. After deducting its fees, Amazon periodically remitted the remaining proceeds of the sales of the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, to ShenZhen.

121. Amazon was pivotal in bringing the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, to market for consumers in the United States.

122. Amazon is a direct link in the chain of distribution of the JUNSYOUNG Heated Insoles ASIN B0CCDR266V.

123. Amazon acted as an intermediary between the JUNSYOUNG Heated Insoles ASIN B0CCDR266V.

124. Amazon was a "distributor" that "distributed" the JUNSYOUNG Heated Insoles ASIN B0CCDR266V, "in commerce," as those terms are defined in Sections 3(a)(5), (7), and (8) of the CPSA, 15 U.S.C. §§ 2052(a)(5), (7), and (8).

**Amazon is Well Aware of the Risks Associated with Battery Heated Clothing Manufactured in China**

125. Amazon is well aware of the risks associated with electric socks, insoles and other lithium battery rechargeable devices manufactured in China that are not safety tested in the United States.

126. On December 22, 2023, Shayne Lemieux, 32, purchased from Amazon a pair of rechargeable battery heated insoles for his job which caught on fire and hospitalized hi for burns. Amazon was contacted and warned. https://torontosun.com/news/local-news/burlington-man-suffers-burns-after-amazon-insoles-catch-fire.

18

127.    In 2018, The Consumer Product Safety Commission, recalled heated socks due to fire and burn hazards that were sold on Amazon and manufactured in China by Shenzhen FCY Technology Co. Ltd.: https://www.wbrc.com/2019/03/19/heated-socks-recalled-fire-burn-hazards.

128.    Amazon was further aware of the dangers of electric socks manufactured in China and not tested in the US when an Illinois man suffered severe burns resulting in his death: https://madisonrecord.com/stories/650274967-amazon-settles-suit-alleging-imported-electric-socks-caused-death. *Scott v. Glob. Vasion, Inc.*, 2023 U.S. Dist. LEXIS 224148.

129.    Amazon continued to sell Junsyoung items with Lithium batteries despite customer warnings:





130. There are numerous cases filed in other districts for socks etc that have caused burns and personal injuries to consumers, so Amazon was well aware of the necessity to investigate and to halt the sale of these products.[1]

**Plaintiff Purchases the Heated Insoles**

131. On or about December 22, 2023, Plaintiff ordered a pair of the JUNSYOUNG Heated Insoles , Order #114-0342655-0157858 and paid Amazon $49.89.

132. The JUNSYOUNG Heated Insoles were delivered on December 23 2023.

133. Plaintiff chose to purchase JUNSYOUNG Heated Insoles in whole or in part, in reliance upon the statements, representations, guarantees, warranties and/or promises made by ShenZhen and published on the Amazon.com website stated above including, but not limited to, the statements, representations, that the insoles would keep his feet warm while he was outside.

134. Amazon retrieved the JUNSYOUNG Heated Insoles from inventory at an Amazon fulfillment center or warehouse.

135. Amazon packed the JUNSYOUNG Heated Insoles in a box printed with Amazon's name and logo.

---

[1] See,e.g, *Muller et al. v. Shen Zhen Shi Bai Lu Hu Wai Yong Pin Co., Ltd. Et al.,* US District Court for the District of New Jersey, 1:21cv20547

136. Amazon applied a shipping label to the box containing the JUNSYOUNG Heated Insoles.

137. Amazon selected the shipping carrier that would deliver the JUNSYOUNG Heated Insoles to Plaintiff's home address.

138. Amazon provided the instructions and arrangements for the shipping carrier to pick up the JUNSYOUNG Heated Insoles, from an Amazon Fulfillment Center or warehouse for delivery the Plaintiff's home address.

139. Amazon delivered and transferred the box containing the JUNSYOUNG Heated Insoles delivery to the Plaintiff's home address.

140. Thereafter, upon information and belief, Amazon remitted to ShenZhen money collected from Plaintiff for the purchase of the JUNSYOUNG Heated Insoles, less Amazon's service fees and shipping costs.

**The Junsyoung Heated Insoles Explode**

141. During the time that Plaintiff's wore the "JUNSYOUNG Heated Insoles they reached temperatures well in excess of those capable of causing second and/or third-degree burns.

142. The JUNSYOUNG Heated Insoles, worn by Plaintiff's were capable of reaching temperatures well in excess of 170 degrees Fahrenheit.

143. On March 1, 2024, while Plaintiff was wearing the JUNSYOUNG Heated Insoles, the lithium battery in the right insole exploded and his entire foot caught on fire. In fact, the picture on the Jyunsyoung box ironically depicts what a shoe will look like when the insole is ignited:




144. Plaintiff's sock, shoe and skin were completely melted. Plaintiff was rushed to Crozer Chester Hospital and was diagnosed with fourth degree burns to his right foot.

145. Plaintiff has undergone surgery and will need multiple skin grafts and his injuries most likely will be permanent.

146. Plaintiff suffered loss of a normal life, the diminished ability to enjoy life, diminished quality of life, pain, suffering and emotional distress as a result of the severe burns and injuries to his right foot caused by the JUNSYOUNG Heated Insoles.

147. Plaintiff's wife provided care, assistance and comfort to the Plaintiff and suffered a loss of Plaintiff's love, companionship, comfort, care, assistance, protection, affection, society and moral support as a result of the severe burns and injuries to Plaintiff's right foot caused by the JUNSYOUNG Heated Insoles.

**Amazon's Failure to Protect Customers from Product Injuries**

148. Upon information and belief, China-based sellers represent a significant portion of the third-party vendors selling products on Amazon's marketplace website.

149. Upon information and belief, Chinese sellers make up over 63% of all third-party sellers on Amazon. [https://www.ecomcrew.com/chinese-sellers-manipulating-amazon].

150.     Upon information and belief, Amazon actively recruits sellers from China by routinely holding summits in Mainland China. [https://www.ecomcrew.com/chinese-sellersmanipulating- amazon].

151.    At all times relevant herein, it was foreseeable that the JUNSYOUNG Heated Insoles might or could cause injury or damage to consumers who purchased the product on the Amazon.com website.

152.    At all times relevant herein, Amazon knew or should have known that it was foreseeable that the JUNSYOUNG Heated Insoles might or could cause injury or damage to consumers who purchased the product on the Amazon.com website.

153.     Amazon failed to enforce its own requirement that ShenZhen  maintain commercial general, umbrella or excess liability insurance.

154.     Amazon failed to request that ShenZhen provide to Amazon certificates of insurance evidencing or verifying that ShenZhen maintained commercial general, umbrella or excess liability insurance.

155.    Upon information and belief, Amazon rarely enforced the requirement that sellers maintain commercial general, umbrella or excess liability insurance for products sold on the Amazon.com marketplace website.

155.    Upon information and belief, Amazon rarely requested that sellers provide to Amazon certificates of insurance evidencing or verifying that they maintained commercial general, umbrella or excess liability insurance.

156.    Amazon failed to conduct proper and/or adequate vetting of products sold on the amazon.com website by ShenZhen, including the JUNSYOUNG Heated Insoles, thereby exposing consumers to injuries and damages from defective products.

157. Amazon failed to "protect Amazon customers from risks of injury associated with products offered on Amazon." [https://www.amazon.com/gp/help/customer/display.html?nodeId=202074030].

158. Given Amazon's dominance in the retail world as the nation's largest online retailer, it clearly possesses the market power to require sellers such as ShenZhen to maintain product liability insurance for claims made against products sold on the Amazon.com marketplace website, and to enforce that requirement, but in the interest of profits and to increase sales of low-cost products from China, Amazon chose to forego those requirements.

## COUNT 1
## STRICT PRODUCT LIABILITY
## PLAINITFF V. SHENZHEN KANGERJIAN INTELLIGENT TECHNOLOGY CO., LTD

159. Plaintiffs incorporate the above paragraphs as if set firth fully herein.

160. At all times relevant hereto, ShenZhen was engaged in the business of designing, manufacturing, selling and/or distributing, for ultimate sale to members of the general public, electric heated insoles, including the JUNSYOUNG Heated Insoles.

161. At all times relevant hereto ShenZhen sold and/or distributed electric heated insoles, including the JUNSYOUNG Heated Insoles, through Amazon for sale on its website.

162. At the time the ShenZhen electric heated insoles left the possession of ShenZhen, and at the time the JUNSYOUNG Heated Insoles entered into the stream of interstate commerce, they were in an unreasonably dangerous and defective condition including, but not limited to, the following:

    a) Inadequate design of the heating element;

b) Design and manufacturing defect of the Lithium-Ion Batteries included: defective and unsafe design which resulted in excessive overheating causing an explosion during the normal course and intended use of wearing the heated insoles

c) Inadequate design of the battery pack and holder;

d) Inadequate design of the heat settings;

f) Inadequate warnings about temperature settings;

f) Inadequate warnings for users with diabetes, peripheral neuropathy, or other medical conditions;

g) Inadequate instructions to consumers on how to safely use the product;

h) The heating elements produced excessively high temperatures sufficient to cause burn injuries

i) The insoles lacked a temperature limiting mechanism that would prevent excessively high temperatures sufficient to cause burn injuries;

j) failure to warn: nowhere does the battery pack warn of explosion

163. As a direct and proximate result of one or more of these unreasonably dangerous and defective conditions, the JUNSYOUNG Heated Insoles failed to perform as a consumer would reasonably expect them to perform when the product was being used in a normal and expected manner.

164. As a direct and proximate result of one or more of these unreasonably dangerous and defective conditions, the risks of using the JUNSYOUNG Heated Insoles outweighed the utility or usefulness of the product.

165. It was the duty of ShenZhen in designing, manufacturing, selling and/or distributing the JUNSYOUNG Heated Insoles to make them reasonably safe for their

intended and foreseeable uses, and to ascertain that the insoles were free from defects which would render them unsafe.

166.	In breach of its duty, ShenZhen designed, manufactured, sold and/or distributed the JUNSYOUNG Heated Insoles in a defective, unsafe and unreasonably dangerous condition.

167.	As a direct and proximate result of one or more of the foregoing unreasonably dangerous and defective conditions and ShenZhen's acts or omissions, Plaintiff sustained severe personal injuries.

168.	As a direct and proximate result of one or more of the foregoing unreasonably dangerous and defective conditions and ShenZhen's acts or omissions resulting in the severe personal injuries, Plaintiff has suffered damages.

169.	ShenZhen is strictly liable for the injuries complained of herein by reason of having sold and placed into the stream of commerce the defective the JUNSYOUNG Heated Insoles which were unreasonably dangerous to users.

WHEREFORE, Justin Grams demand judgment against ShenZhen Kangerjian Intelligent Technology co., LTD, in an amount in excess of $10,000,000, together with costs of suit and any further relief as is just and appropriate.

**COUNT II**
**IMPLIED WARRANTY OF MERCHANTABILITY**
**PLAINITFF V. SHENZHEN KANGERJIAN INTELLIGENT TECHNOLOGY CO., LTD**

170.	Plaintiffs incorporate the above paragraphs as if set firth fully herein.

171.	ShenZhen *is a merchant selling goods, including the* JUNSYOUNG Heated Insoles

172.	By offering the JUNSYOUNG Heated Insoles for distribution and sale to

consumers, ShenZhen made an implied warranty that the product was of merchantable quality pursuant to the applicable provisions of the Uniform Commercial Code, and that the insoles:

a. were described or designated were of a quality comparable to that generally acceptable in the trade;

b. were fit for the ordinary purposes for which such goods are used;

c conformed to the promises or statements of fact made on the box, advertisements and/or label.

173. ShenZhen breached its implied warranty in that the JUNSYOUNG Heated Insoles were not of merchantable quality in one or more of the following respects:

a) Inadequate design of the heating element;

b) Design and manufacturing defect of the Lithium-Ion Batteries included: defective and unsafe design which resulted in excessive overheating causing an explosion during the normal course and intended use of wearing the heated insoles

c) Inadequate design of the battery pack and holder;

d) Inadequate design of the heat settings;

f) Inadequate warnings about temperature settings;

f) Inadequate warnings for users with diabetes, peripheral neuropathy, or other medical conditions;

g) Inadequate instructions to consumers on how to safely use the product;

h) The heating elements produced excessively high temperatures sufficient to cause burn injuries

i) The insoles lacked a temperature limiting mechanism that would prevent

excessively high temperatures sufficient to cause burn injuries;

j) failure to warn: nowhere does the battery pack warn of explosion

174. As a direct and proximate result of ShenZhen's breach of the implied warranty of merchantability, Plaintiff suffered severe personal injuries

WHEREFORE, Justin Grams demands judgment against ShenZhen Kangerjian Intelligent Technology co., LTD, in an amount in excess of $10,000,000, together with costs of suit and any further relief as is just and appropriate.

## COUNT III
### STRICT PRODUCT LIABIITY-DESIGN DEFECT
### PLAINTIFF v. AMAZON.COM, INC.

175. Plaintiffs incorporate the above paragraphs as if set forth fully herein.

176. At all times relevant hereto, Amazon was engaged in the business of selling and/or distributing for ultimate sale to members of the general public, the JUNSYOUNG Heated Insoles.

177. At all times relevant hereto, Amazon sold and/or distributed the JUNSYOUNG Heated Insoles on Amazon's website.

178. At all times relevant hereto, Amazon exercised significant control over the product at issue and its sale to consumers on its website, in the following ways:

a. Assign the product at issue an Amazon Standard Identification Number ("ASIN");

b. Maintain electronic records that track inventory of the product stored in Amazon Fulfillment Centers or other Amazon warehouses or facilities;

28

c. Ship the product to the customer directly from Amazon Fulfillment Centers or other Amazon warehouses or facilities;

d. Store the product at Amazon Fulfillment Centers or other Amazon warehouses or facilities until the product is sold to the customer or returned to the third-party seller as "unsuitable";

e. Handle all customer service issues relating to packaging, handling and shipmen and customer returns, refunds and adjustments related to the Amazon Fulfillment Unit;

f. Determine the amounts charged to customers for shipping and gift wrap service for Units sold and fulfilled through the FBA program;

g. Restrict, modify or otherwise determine the content, appearance, design, functionality and all other aspects of a third-party's Product Ads;

h. Remove a third-party's Product Ad without notice;

i. Determine the content, appearance, design, functionality and all other aspects of the Amazon Sites, including by redesigning, modifying, removing or restriction access to any of them, and by suspending, prohibiting or removing any listing;

j. Ensure products (including packaging) comply with all applicable Laws (including marking and labeling requirements);

k. Imported, distributed, and offered the product for sale to consumers on Amazon.com under Amazon's FBA program;

l. Retrieved the product from one or more of its Amazon fulfillment centers or warehouses and shipped the product to customers;

m. Shipped the product in Amazon branded boxes which may include Amazon name, logo and other Amazon-specific branding and messaging;

n.      Retained the option to include other Amazon promotional materials and Amazon specific messaging in the box along with the product;

o.      Shipped the purchased products using either Amazon's own shipping carriers, Amazon approved shipping carriers, or third-party carriers; and Handle and process all customer returns of the product.

179.    At all times relevant hereto, Amazon had knowledge that the JUNSYOUNG Heated Insoles were unreasonably dangerous and defective.

180.    At the time the JUNSYOUNG Heated Insoles left the possession of Amazon, and at the time the JUNSYOUNG Heated Insoles entered into the stream of interstate commerce, they were in an unreasonably dangerous and defective condition including, but not limited to, the following:

a.      Inadequate design of the heating element;

b.      Design and manufacturing defect of the Lithium-Ion Batteries included: defective and unsafe design which resulted in excessive  overheating causing an explosion during the normal course and intended use of wearing the heated insoles

c.      Inadequate design of the battery pack and holder;

d.      Inadequate design of the heat settings;

e.      Inadequate warnings about temperature settings;

f.      Inadequate warnings about the safety hazards;

g.      Inadequate instructions to consumers on how to safely use the product;

h.      The heating elements produced excessively high temperatures sufficient to cause burn injuries;

i.      The insoles lacked a temperature limiting mechanism that would prevent

excessively high temperatures sufficient to cause burn injuries;

      j.     The insoles lacked a timed shut-off mechanism to prevent long duration exposure;

      k.     failure to warn or advise consumers of the maximum temperatures achieved at each setting;

      l.     failure to warn or advise consumers that the battery pack may explode causing fire.

181. At all times relevant hereto, Amazon was in the chain of distribution for the JUNSYOUNG Heated Insoles, and was subject to strict liability in tort.

182. As a direct and proximate result of one or more of these unreasonably dangerous and defective conditions, the JUNSYOUNG Heated Insoles failed to perform as a consumer would reasonably expect them to perform when the product was being used in a normal and expected manner.

183. As a direct and proximate result of one or more of these unreasonably dangerous and defective conditions, the risks of using the JUNSYOUNG Heated Insoles outweighed the utility or usefulness of the product.

184. It was the duty of Amazon in selling and/or distributing the JUNSYOUNG Heated Insoles to make them reasonably safe for their intended and foreseeable uses, and to ascertain that the insoles were free from defects that would render them unsafe.

185. In breach of its duty, Amazon sold and/or distributed the JUNSYOUNG Heated Insoles in a defective, unsafe and unreasonably dangerous condition.

186. As a direct and proximate result of one or more of the foregoing unreasonably

dangerous and defective conditions and Amazon's acts and/or omissions, Plaintiff sustained severe personal injuries.

187. Amazon is strictly liable for the injuries complained of herein by reason of having sold and placed into the stream of commerce the defective JUNSYOUNG Heated Insoles, which were unreasonably dangerous to users.

WHEREFORE, Justin Grams demands judgment against Amazon.com, Inc., in an amount in excess of $10,000,000, together with costs of suit and any further relief as is just and appropriate.

## COUNT IV
### STRICT PRODUCT LIABIITY-FAILURE TO WARN
### PLAINTIFF v. AMAZON.COM, INC.

188. Plaintiffs incorporate the above paragraphs as if set forth fully herein.

189. At all times relevant hereto, Amazon was engaged in the business of selling and/or distributing for ultimate sale to members of the general public, the JUNSYOUNG Heated Insoles.

190. At all times relevant hereto, Amazon sold and/or distributed the JUNSYOUNG Heated Insoles on Amazon's website.

191. At all times relevant hereto, Amazon exercised significant control over the product at issue and its sale to consumers on its website, in the following ways:

   a. Assign the product at issue an Amazon Standard Identification Number ("ASIN");

   b. Maintain electronic records that track inventory of the product stored in Amazon Fulfillment Centers or other Amazon warehouses or facilities;

c.     Ship the product to the customer directly from Amazon Fulfillment Centers or other Amazon warehouses or facilities;

d.     Store the product at Amazon Fulfillment Centers or other Amazon warehouses or facilities until the product is sold to the customer or returned to the third-party seller as "unsuitable";

e.     Handle all customer service issues relating to packaging, handling and shipmen and customer returns, refunds and adjustments related to the Amazon Fulfillment Unit;

f.     Determine the amounts charged to customers for shipping and gift wrap service for Units sold and fulfilled through the FBA program;

g.     Restrict, modify or otherwise determine the content, appearance, design, functionality and all other aspects of a third-party's Product Ads;

h.     Remove a third-party's Product Ad without notice;

i.     Determine the content, appearance, design, functionality and all other aspects of the Amazon Sites, including by redesigning, modifying, removing or restriction access to any of them, and by suspending, prohibiting or removing any listing;

j.     Ensure products (including packaging) comply with all applicable Laws (including marking and labeling requirements);

k.     Imported, distributed, and offered the product for sale to consumers on Amazon.com under Amazon's FBA program;

l.     Retrieved the product from one or more of its Amazon fulfillment centers or warehouses and shipped the product to customers;

m.     Shipped the product in Amazon branded boxes which may include Amazon name, logo and other Amazon-specific branding and messaging;

n.     Retained the option to include other Amazon promotional materials and Amazon specific messaging in the box along with the product;

o.     Shipped the purchased products using either Amazon's own shipping carriers, Amazon approved shipping carriers, or third-party carriers; and Handle and process all customer returns of the product.

179.     At all times relevant hereto, Amazon had knowledge that the JUNSYOUNG Heated Insoles were unreasonably dangerous and defective. Amazon was well aware of the dangers of the batteries catching fire and burns as not only was it warned based on customer reviews on its site, but lawsuits for wearing apparel catching fire from the batteries exploding.

180.     At the time the JUNSYOUNG Heated Insoles left the possession of Amazon, and at the time the JUNSYOUNG Heated Insoles entered into the stream of interstate commerce, they were in an unreasonably dangerous and defective condition including, but not limited to, the following:

a.     Inadequate design of the heating element;

b.     Design and manufacturing defect of the Lithium-Ion Batteries included: defective and unsafe design which resulted in excessive  overheating causing an explosion during the normal course and intended use of wearing the heated insoles

c.     Inadequate design of the battery pack and holder;

d.     Inadequate design of the heat settings;

e.     Inadequate warnings about temperature settings;

f.     Inadequate warnings about the safety hazards;

g.     Inadequate instructions to consumers on how to safely use the product;

h.  The heating elements produced excessively high temperatures sufficient to cause burn injuries;

i.  The insoles lacked a temperature limiting mechanism that would prevent excessively high temperatures sufficient to cause burn injuries;

j.  The insoles lacked a timed shut-off mechanism to prevent long duration exposure;

k.  failure to warn or advise consumers of the maximum temperatures achieved at each setting;

l.  failure to warn or advise consumers that the battery pack may explode causing fire.

181.  At all times relevant hereto, Amazon was in the chain of distribution for the JUNSYOUNG Heated Insoles, and was subject to strict liability in tort.

182.  The JUNSYOUNG Heated Insoles did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended way.

183.  As a direct and proximate result of one or more of these unreasonably dangerous and defective conditions, the JUNSYOUNG Heated Insoles failed to perform as a consumer would reasonably expect them to perform when the product was being used in a normal and expected manner.

184.  As a direct and proximate result of one or more of these unreasonably dangerous and defective conditions, the risks of using the JUNSYOUNG Heated Insoles outweighed the utility or usefulness of the product.

185.  It was the duty of Amazon in selling and/or distributing the JUNSYOUNG Heated Insoles to make them reasonably safe for their intended and foreseeable uses, and to

ascertain that the insoles were free from defects that would render them unsafe. Further, Amazon had a duty to warn consumers that the batteries could explode and that fire and/or severe burns could occur.

186.     In breach of its duty, Amazon sold and/or distributed the JUNSYOUNG Heated Insoles in a defective, unsafe and unreasonably dangerous condition.

187.     The JUNSYOUNG Heated Insoles did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended way.

188.     As a direct and proximate result of one or more of the foregoing unreasonably dangerous and defective conditions and Amazon's acts and/or omissions, Plaintiff sustained severe personal injuries.

189.     Amazon is strictly liable for the injuries complained of herein by reason of having sold and placed into the stream of commerce the defective JUNSYOUNG Heated Insoles, which were defective and unreasonably dangerous to users.

WHEREFORE, Justin Grams demands judgment against Amazon.com, Inc., in an amount in excess of $10,000,000, together with costs of suit and any further relief as is just and appropriate.

**COUNT V**
**NEGLIGENCE**
**PLAINTIFF v. AMAZON.COM, INC.**

190.     Plaintiffs incorporate the above paragraphs as if set forth fully herein.

191.     Amazon had a nondelegable duty to distribute and sell reasonably safe products and to use due care in order to avoid foreseeable harm to the intended users of the JUNSYOUNG Heated Insoles, including the Plaintiff.

192.     In violation of its duty, Amazon permitted the JUNSYOUNG Heated Insoles

to enter into the stream of commerce even though they were unreasonably safe in one or more of the following respects:

     a.     Inadequate design of the heating element;

     b.     Design and manufacturing defect of the Lithium-Ion Batteries included: defective and unsafe design which resulted in excessive overheating causing an explosion during the normal course and intended use of wearing the heated insoles

     c.     Inadequate design of the battery pack and holder;

     d.     Inadequate design of the heat settings;

     e.     Inadequate warnings about temperature settings;

     f.     Inadequate warnings about the safety hazards;

     g.     Inadequate instructions to consumers on how to safely use the product;

     h.     The heating elements produced excessively high temperatures sufficient to cause burn injuries;

     i.     The insoles lacked a temperature limiting mechanism that would prevent excessively high temperatures sufficient to cause burn injuries;

     j.     The insoles lacked a timed shut-off mechanism to prevent long duration exposure;

     k.     failure to warn or advise consumers of the maximum temperatures achieved at each setting;

     l.     failure to warn or advise consumers that the battery pack may explode causing fire.

193.    Amazon failed to exercise reasonable care in the sale and distribution of the JUNSYOUNG Heated Insoles

194. Amazon knew, or in the exercise of ordinary care should have known, of the unsafe conditions of the product.

195. Amazon was clearly on notice of the dangerous conditions of heated socks and insoles manufactured in China and not tested by any standards in this country, especially having suit brought for socks that used lithium batteries that exploded and/or caught fire.

196. As a direct and proximate result of one or more of the foregoing unreasonably dangerous and defective conditions and Amazon's acts and/or omissions, Plaintiff sustained severe personal injuries.

WHEREFORE, Justin Grams demands judgment against Amazon.com, Inc., in an amount in excess of $10,000,000, together with costs of suit and any further relief as is just and appropriate.

**COUNT VI**
**IMPLIED WARRANTY OF MERCHANTABILITY**
**PLAINTIFF v. AMAZON.COM, INC.**

197. Plaintiffs incorporate the above paragraphs as if set forth fully herein.

198. Amazon is a merchant selling goods, including the JUNSYOUNG Heated Insoles

199. By offering the JUNSYOUNG Heated Insoles for distribution and sale to consumers, Amazon made an implied warranty that the product was of merchantable quality pursuant to the applicable provisions of the Uniform Commercial Code.

200. Amazon breached its implied warranty in that the JUNSYOUNG Heated Insoles were not of merchantable quality in one or more of the following respects:

      a.     Inadequate design of the heating element;

b.      Design and manufacturing defect of the Lithium-Ion Batteries included: defective and unsafe design which resulted in excessive  overheating causing an explosion during the normal course and intended use of wearing the heated insoles

c.      Inadequate design of the battery pack and holder;

d.      Inadequate design of the heat settings;

e.      Inadequate warnings about temperature settings;

f.      Inadequate warnings about the safety hazards;

g.      Inadequate instructions to consumers on how to safely use the product;

h.      The heating elements produced excessively high temperatures sufficient to cause burn injuries;

i.      The insoles lacked a temperature limiting mechanism that would prevent excessively high temperatures sufficient to cause burn injuries;

j.      The insoles lacked a timed shut-off mechanism to prevent long duration exposure;

k.      failure to warn or advise consumers of the maximum temperatures achieved at each setting;

l.      failure to warn or advise consumers that the battery pack may explode causing fire.

201.    The JUNSYOUNG Heated Insoles are/were defective and were not safe and/or effective for their intended use. The JUNSYOUNG Heated Insoles were not of merchantable quality as warranted by Defendants in that they were defectively manufactured, labeled, merchandized, promoted, distributed and sold causing Plaintiff's injuries.

202.    As a direct and proximate result of Amazon's breach of the implied warranty of

merchantability, Plaintiff Justin  suffered severe personal injuries.

WHEREFORE, Justin Grams demands judgment against Amazon.com, Inc., in an amount in excess of $10,000,000, together with costs of suit and any further relief as is just and appropriate.

**COUNT VII**
**LOSS OF CONSORTIUM**
**KRISTA GRAMS V. ALL DEFENDANTS**

203. Plaintiffs incorporate the above paragraphs as if set forth fully herein.

204. Plaintiff Krista Grams is the lawful wife of Plaintiff Justin Grams

205.     As a direct and or proximate result of her husband;' injuries, as caused by Defendants' actions and inactions as set forth more fully above, Plaintiff Justin Grams has been caused to suffer great mental and emotional anguish and loss life's enjoyment which will continue into the future.

206.     As a direct and or proximate result of her husband's injuries, as caused by Defendants' actions and inactions as set forth more fully above, Plaintiff Krista Grams has been caused to suffer loss of consortium, martial services, and or the companionship of her spouse, to her great detriment and loss.

WHEREFORE, Krista Grams demands judgment against ShenZhen Kangerjian Intelligent Technology co., LTD, and Amazon.Com, jointly and severally, in an amount in excess of $10,000,000, together with costs of suit and any further relief as is just and appropriate.

## COUNT VII
## VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES & CONSUMER PROTECTION LAW
## PLAINTIFF v. AMAZON.COM, INC.

207. Plaintiffs incorporate the above paragraphs as if set forth fully herein

208.  Plaintiffs incorporate the above paragraphs as if set forth fully herein.

209. Plaintiff and Amazon are "persons," as meant by 73 PA. CONS. STAT. § 201-2(2).

210. The Plaintiff purchased goods and services in "trade" and "commerce," as meant by 73 PA. CONS. STAT. §§ 201-2(3), 201-9.2, "primarily for personal, family, and/or household purposes."

211. Amazon engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce in violation of 73 PA. CONS. STAT. § 201-3, including the following: representing that goods and services have characteristics, uses, benefits, and qualities that they do not have (73 PA. CONS. STAT. § 201-2(4)(v)); representing that goods and services are of a particular standard or quality if they are another (73 PA. CONS. STAT. § 201-2(4)(vii)); advertising goods and services with intent not to sell them as advertised (73 PA. CONS. STAT. § 201-2(4)(ix)); and engaging in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (73 PA. CONS. STAT.§ 201-2(4)(xxi)).

212. Amazon's representations and omissions were material because they were likely to deceive reasonable consumers.

213. Plaintiff relied on the Amazon website that marketed the heated insoles that there were safe and tested and were hence marketed by Defendants to consumers as safe and effective,

and was advertised, packaged and warranted with the assurance: "PLEASE REST ASSURED TO BUY!"

214.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, the Amazon website's misrepresentations, concealment, half-truths, and omissions, marketing, and the label, and packaging were part of a ploy to defraud consumers and users into believing that the heated insoles were safe and legally marketed.

215.    As a direct and proximate result of Defendants' unfair or deceptive methods, acts, or practices,  Plaintiff Justin  suffered severe personal injuries.

WHEREFORE, Justin Grams demands judgment against Amazon.com, Inc., in an amount including actual damages or statutory damages, whichever is greater, plus treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

Respectfully submitted:

Dated: April 2, 2024

_____
Robert J. Birch, Esquire
Id. No. 65816
PO Box 1133
North Wales, PA 19454
(610) 277-9700
Rachel DeAngelo, Esquire
ID. No. 73541
P.O. Box 1104
Kulpsville, PA 19443
(215) 361-9502